FILED
CLERK

☐ ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

09 SEP 18 PM 12: 15

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

---------------------------------------x

EMIGDIO A. BUCOBO, M.D.

**VERIFIED COMPLAINT**

Plaintiff,

Docket No.: — CV

-against-

**JURY TRIAL DEMANDED**

09-4030

CENTRAL BROOKLYN MEDICAL GROUP, P.C.:
d/b/a PREFERRED HEALTH PARTNERS, :
DR. MARTIN VALDES and
DR. LESLY KERNISANT

JOHNSON,

Defendant(s),

---------------------------------------x

## NATURE OF ACTION

1.      Plaintiff EMIGDIO A. BUCOBO, M.D. ("Dr. Bucobo" or "Plaintiff") brings this action against defendants CENTRAL BROOKLYN MEDICAL GROUP, P.C. d/b/a PREFERRED HEALTH PARTNERS ("CBMG"), DR. MARTIN VALDES ("Valdes") and DR. LESLY KERNISANT ("Kernisant"), for declaratory and monetary relief and damages (compensatory and punitive) for injuries plaintiff has sustained as a result of defendants' age discrimination against him and defendants' retaliation against him for investigating, disclosing and opposing said discrimination, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 ("ADEA"), the New York State Human Rights Law, New York Executive Law § 296 et seq., (the "Executive Law") and the Administrative Code of the City of New York § 8-107 et seq. (the "City Law").'

2.      The plaintiff, DR. BUCOBO, through his attorney, CHRISTINE A. RODRIGUEZ, complaining of the defendants, respectfully alleges:

## JURISDICTION

3.      Pursuant to § 8-502(c) of the City Law, prior to filing this Complaint, plaintiff served a copy of the Complaint on the City of New York Commission on Human Rights and the City of New York Corporation Counsel.

4.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(4).  The Court has supplemental jurisdiction over the claims brought under the Executive Law and the City Law pursuant to 28 U.S.C. § 1367.

5.      As the unlawful practices complained of herein occurred within the Eastern District of New York, venue is proper in this District pursuant to 28 U. S. C. § 1391.

6.      The amount in controversy exceeds $75,000.00 excluding interest and costs.

7.      Dr. Bucobo filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 2, 2008.

8.      The EEOC issued a "Notice of Right to Sue" to sue to Dr. Bucobo and his attorney, dated June 22, 2009 and received by Dr. Bucobo's attorney on June 24, 2009.

## PARTIES

9.      Plaintiff is a 63 year old general and vascular surgeon who, at all times relevant to the complaint herein and currently resides in the County of Nassau, State of New York.

10.      At all times relevant herein, the plaintiff was employed by defendant, CBMG as a general surgeon in defendant CBMG's Brooklyn based medical group and practiced out of several of the defendant's centers in Brooklyn, New York.  Plaintiff performed all manner of surgical procedures, both ambulatory and inpatient, as necessary based on a patient's diagnosis.

11.      At all times hereinafter mentioned, and upon information and belief, the

defendant, CBMG, was at all times relevant hereto, a professional business corporation duly organized and existing pursuant to the laws, statutes and charters of the State of New York, currently doing business as Preferred Health Partners, with its principal place of business in Kings County, New York.

12.    At all times hereinafter mentioned, and upon information and belief, the defendant, CBMG, was at all times relevant hereto, a limited liability corporation duly organized and existing pursuant to the laws, statutes and charters of the State of New York, currently doing business as Preferred Health Partners, with its principal place of business in Kings County, New York.

13.    At all times hereinafter mentioned, and upon information and belief, the defendant, CBMG, was at all times relevant hereto, a domestic partnership, duly organized and existing pursuant to the laws, statutes and charters of the State of New York, currently doing business as Preferred Health Partners, with its principal place of business in Kings County, New York.

14.    At all times hereinafter mentioned, and upon information and belief, the defendant, CBMG, was at all times relevant hereto, an unincorporated business entity, duly organized and existing pursuant to the laws, statutes and charters of the State of New York, currently doing business as Preferred Health Partners, with its principal place of business in Kings County, New York.

15.    At all times hereinafter mentioned, and upon information and belief, the defendant, VALDES, was at all times relevant hereto, a medical doctor, licensed by the State of New York, formerly the Chief Executive Office of defendant CBMG and a resident of New York County, State of New York.

16.     At all times hereinafter mentioned, and upon information and belief, the defendant, KERNISANT, was at all times relevant hereto, a medical doctor, licensed by the State of New York, currently the Chief Executive Office of defendant CBMG and a resident of Kings County, State of New York.

## FACTUAL ALLEGATIONS

17.     Plaintiff was discharged from his employment as a general surgeon with defendant CBMG on October 26, 2007 without warning and without cause.

18.     Prior to his discharge, plaintiff was an employee of defendant CBMG and worked as a general surgeon with the defendant since 2000 through the date of plaintiff's discharge in 2007.

19.     Beginning in or about January 2001 plaintiff was stripped of his shareholder status as a member of the medical group that was absorbed by defendant CBMG when the defendant changed its corporate structure subsequent to a merger between Brooklyn Medical Group and New York Medical Group which resulted in the defendant's current corporate structure as the Central Brooklyn Medical Group, P.C., currently doing business as Preferred Health Partners.  In or about January 2001, defendant CBMG, advised plaintiff that his continued employment was conditioned upon plaintiff signing an employment agreement.

20.     Although at the time that plaintiff was required to sign said employment agreement, plaintiff requested a copy of the entire agreement, plaintiff was only provided with the signature page of said agreement, told that he had to sign it or he would not be employed by CBMG and the plaintiff has not received a full copy of said agreement to date.  Upon information and belief, said agreement expressly limited defendant CBMG's right to discharge the plaintiff and the plaintiff was not an employee at-will.

21.     During the course of plaintiff's employment with CBMG, plaintiff was required to see and treat patients at four (4) of CBMG's medical centers, located at:

Bedford/Williamsburg Center
233 Nostrand Avenue
Brooklyn, NY 11205
(718) 826-5900

Coney Island Center
1230 Neptune Avenue
Brooklyn, NY 11224
(718) 615-3200

Empire Center
546 Eastern Parkway
Brooklyn, NY 11225
(718) 604-4800

Brooklyn Heights Center
200 Montague Street
Brooklyn, NY 11201
(718) 422-8000

22.     Plaintiff was required to spend 15 office hours a week to cover all of his assigned centers seeing patients in addition to performing surgical procedures, being on call and all of plaintiff's other physician's duties.

23.     During the course of his employment with CBMG, no other surgeon treated patients at more centers than the plaintiff.

## Discriminatory Acts

24.     On October 26, 2007, plaintiff was advised by the then Vice President of CBMG, defendant Dr. Lesly Kernisant that plaintiff was terminated from his employment with CBMG effective immediately.

25.     Defendant KERNISANT told plaintiff that the reason for his discharge was because the number of patients that plaintiff was responsible for treating was down, that CBMG

was about to "reorganize" and that plaintiff would be required to take on more patients if plaintiff remained employed by CBMG. Additionally, plaintiff was advised that his discharge was at the behest of then CBMG CEO defendant Dr. Martin Valdes.

26.     After explaining the reason for plaintiff's discharge KERNISANT stated to plaintiff "At your age you would not want to take on more patients anyway. I know I wouldn't." Plaintiff was 62 years old at the time that he was discharged.

27.     Prior to being discharged by KERNISANT, plaintiff had never been reprimanded, disciplined for any reason or advised that unless plaintiff took on more patients plaintiff's employment would be terminated.

28.     Upon information and belief, immediately after plaintiff was discharged from his employment with CBMG, plaintiff's patients were taken over by Dr. Albert Duncan, another CBMG surgeon. Dr. Duncan is approximately 10 years younger than the plaintiff and was plaintiff's resident before Dr. Duncan came to work for CBMG, when plaintiff did a rotation through Long Island College Hospital.

29.     At the time of plaintiff's termination from employment, all but one of CBMG's surgeons was significantly younger than the plaintiff. In fact all of the other surgeons at CBMG graduated from medical school on average 22 years after the respondent.

30.     Additionally, no other surgeon was terminated due to CBMG's alleged "corporate restructuring" and based upon statistics in charts distributed at regular staff meetings, prior to plaintiff's termination, plaintiff's patient numbers were not lower than any of the other surgeons.

31.     In reality, at the time of plaintiff's termination, CBMG was not experiencing a decline in patient enrollment, revenue problems or undergoing a corporate restructuring. In fact, CBMG continues to grow, opened a large new center in the last year, expanded service hours and

needs more physicians to deal with its current patient demand.

32.      Additionally, after plaintiff lost his shareholder status and was employed by defendant CBMG in or about 2001 defendant VALDES also began a course of conduct that culminated in the eventual termination of plaintiff's employment because of plaintiff's age.

33.      Upon information and belief, plaintiff's age related termination was further in retaliation for plaintiff refusing to take actions that would jeopardize patient care as directed by VALDES, in retaliation for plaintiff's complaints about plaintiff's good faith, reasonable belief that plaintiff was treated unfairly by the defendants because plaintiff was unjustly stripped of his shareholder status, required to work in more centers than any of the other younger surgeons employed by CBMG and deliberately placed in a position by VALDES to lose patients to another surgeon (who happened to be younger) in the group and then unfairly criticized for not treating more patients.

34.      VALDES' actions evidencing his intention to terminate plaintiff because of plaintiff's age and in retaliation for objecting to unfair and discriminatory treatment were brought to plaintiff's attention and became apparent during the year prior to plaintiff's termination in 2007.

35.      For example, on more than one occasion, plaintiff mentioned to VALDES that before the prior CEO of CBMG, Dr. Byron Toyloy (now deceased), stepped down after 2001, Dr. Toyloy promised plaintiff that plaintiff would receive an additional $10,000 on top of plaintiff's regular salary to make up for the loss of the value of plaintiff's shares when plaintiff was forced to relinquish his shareholder status.  This never occurred and VALDES refused to acknowledge this promise.

36.      On another occasion some time in 2007, soon before plaintiff was terminated,

VALDES specifically told plaintiff that if plaintiff overbooked patients and increased the number of patients that plaintiff was treating, plaintiff would receive the $10,000 promised to him by the former CEO, Dr. Toyloy.

37.     VALDES made this promise with the full knowledge that plaintiff was already working out of more centers than any of the younger surgeons employed by CBMG and that it was not possible for plaintiff to increase the volume of patients that plaintiff was seeing due to scheduling constraints, plaintiff's scheduled surgical procedures and other physician responsibilities. VALDES was also aware that if plaintiff was required to increase the volume of patients at that time in 2007, it would be at the expense of patient care. Plaintiff expressed his concerns about this directly to VALDES on various occasions.

38.     VALDES was also aware, or should have been aware, that plaintiff was the only physician at CBMG who was required to see patients at four (4) centers, while the other physicians saw patients at no more than three (3) centers. Additionally, because of the number of centers that plaintiff was assigned to in 2007, plaintiff began to experience a high number of patient cancellations because plaintiff could only be at any of his assigned centers about one time per month and many patients were lured away by another younger surgeon at CBMG, Dr. Caryl, who took advantage of plaintiff's overtaxed patient schedule. VALDES was aware that Dr. Caryl was luring patients away from the plaintiff and that this was done, in part, in and effort to increase the number of CBMG patients treated out of Brooklyn Hospital, where Dr. Caryl was the Chief of Surgery and which would result in a benefit to VALDES' relationship with CBMG's main health insurance carrier, HIP.

39.     Additionally, because of the procedure by which patients are scheduled at defendant CBMG's individual centers, plaintiff could not control the number of patients that

plaintiff saw and treated at any given time while employed by CBMG and both VALDES and KERNISANT were aware of this. Patients were scheduled by the support staff at each center under the supervision of CBMG's officers and department heads.

40.   Before plaintiff was terminated, plaintiff was actually consulting with more patients than most of the surgeons employed by CBMG. However, plaintiff noticed a decline in the number of patients that actually required surgical procedures that were sent to plaintiff for treatment and that many of the patients that might otherwise be sent to plaintiff for surgery were sent instead sent to the younger Dr. Caryl. Plaintiff complained about this to Dr. Bernard Rimpel, CBMG's Chief of Surgery, on several occasions to no avail.

41.   Plaintiff believes that defendants caused plaintiff's patient schedule and assignments during 2007 to be set in such a manner as to create a pretext for plaintiff's termination based on a reduction in the number of patients plaintiff was treating because of an underlying belief that plaintiff would be unable or unwilling to take on even more patients due to plaintiff's age.

42.   Additionally, on or about August 16, 2007, plaintiff consulted with one of his terminally ill patients on whom plaintiff had performed a surgical procedure one year prior. The patient was seeking additional surgical treatment, which, based upon plaintiff's knowledge of the patient's medical history and medical condition at the time, was not medically recommended, extremely risky and would not have been successful. Nonetheless, this patient was referred to Dr. Caryl who, over plaintiff's objection, advised this patient to go forward with this surgical procedure. When plaintiff once again advised the patient that this procedure was not medically advisable and that plaintiff would not perform it, Dr. Caryl caused a complaint to be lodged with VALDES, who them threatened to fire the plaintiff if plaintiff did not perform the procedure.

43.     As a result, Dr. Rimpel, had to intervene on plaintiff's behalf.  After Dr. Rimpel reviewed the case, confirmed plaintiff's evaluation of the patient's condition and plaintiff's recommendation VALDES reluctantly backed down.  Afterwards, plaintiff was advised that although VALDES accepted Dr. Rimpel's confirmation of plaintiff's decisions and advice regarding the patient, VALDES also stated in substance "I should just hurry up and fire him already."

44.     Sometime soon after the above described incident, also during the summer of 2007, VALDES told Dr. Rimpel that VALDES wanted to hire a younger general surgeon, who wanted to concentrate in plastic surgery.  However, when Dr. Rimpel discovered that it was VALDES' intention to offer this surgeon a $250,000 annual salary (more than double what plaintiff was earning when terminated), Dr. Rimpel objected to the new hire.  However, upon information and belief, since plaintiff was terminated, several other younger surgeons have been hired by CBMG.

45.     Additionally, in approximately August or September of 2007, when plaintiff reported for work at the Bedford center location, plaintiff was approached by the person in charge of CBMG's computer network who advised plaintiff that he was instructed to collect plaintiff's laptop from him because plaintiff had been fired.  Plaintiff then immediately discovered that plaintiff's access to CBMG's network had been blocked.  When plaintiff asked Dr. Rimpel why plaintiff was fired, Dr. Rimpel told plaintiff not to worry because he had not actually been fired. Plaintiff never received any explanation for this incident.

46.     In fact, since plaintiff was terminated, CBMG's surgeons have become overwhelmed with the number of patients that they must see and treat and CBMG is in dire need of additional surgeons to meet its patient needs.  Dr. Rimpel can attest to this fact.

47.     Additionally, the surgeons cannot meet the demand for the number of patients at the various centers and CBMG needs another surgeon to assist with this demand. Nonetheless, despite this growing need and although the plaintiff was allegedly discharged because of low patient numbers and an alleged corporate restructuring, CBMG, and more specifically, KERNISANT, refuses to reinstate or rehire plaintiff.

48.     Moreover, upon information and belief, several other doctors over the age of 40 have also been terminated, suffered adverse employment actions or been forced to retire by CBMG over the last few years. These individuals are (1) Dr. Henry Francis, internist who was allegedly terminated because he was not seeing enough patients and taking too much time with patient visits; (2) Dr. Teneal, a general surgeon who forced to retire in order to avoid being terminated; and (3) Dr. Moskowitz, a gastroenterologist who had to negotiate a lower salary to avoid termination

## FIRSTCAUSE OF ACTION AS TO CBMG
### Age Discrimination Under the ADEA

49.     Plaintiff repeats, reiterates and realleges paragraphs 1 to 48 of this Complaint as if fully set forth herein.

50.     By the acts and practices described above, Defendant has discriminated against plaintiff in the terms and conditions of his employment on the basis of his age in violation of the ADEA.

51.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

## SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS
### Age Discrimination Under the Executive Law

52.     Plaintiff repeats, reiterates and realleges paragraphs 1 to 51 of this Complaint as if fully set forth herein.

53.     By the acts and practices described above, defendants have discriminated against plaintiff in the terms and conditions of his employment and by acting adversely against plaintiff on the basis of plaintiff's age, and defendants VALDES and KERNISANT aided and abetted in said discrimination in violation of the Executive Law §§ 290 to 297.

54.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

## THIRD CAUSE OF ACTION AS TO ALL DEFENDANTS
### Age Discrimination Under the Administrative Code

55.     Plaintiff repeats, reiterates and realleges paragraphs 1 to 54 of this Complaint as if fully set forth herein.

56.     By the acts and practices described above, defendants have discriminated against plaintiff in the terms and conditions of his employment and by acting adversely against plaintiff on the basis of his age and defendants VALDES and KERNISANT aided and abetted in said discrimination, in violation of the Administrative Code §§ 8-101 to 131.

57.     Defendants acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

58.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendants' discriminatory acts.

## FOURTH CAUSE OF ACTIONAS TO CBMG
### Retaliation Under the ADEA

59.     Plaintiff repeats and realleges paragraphs 1 to 58 of this Complaint as if fully set forth herein.

60.     By the acts and practices described above, defendant has retaliated against plaintiff in violation of the ADEA.

61.     Plaintiff is now suffering irreparable injury and monetary damage from defendant's retaliatory conduct and will continue to do so unless and until the Court grants relief.

## FIFTH CAUSE OF ACTION AS TO ALL DEFENDANTS
### Retaliation Under the Executive Law

62.     Plaintiff repeats and realleges paragraphs 1 to 61 of this Complaint as if fully set forth herein.

63.     By the acts and practices described above, defendants have retaliated and defendants VALDES and KERNISANT have aided and abetted in said retaliation against plaintiff in violation of the Executive Law.

64.     Plaintiff is now suffering irreparable injury and monetary damage from defendants' retaliatory conduct and will continue to do so unless and until the Court grants relief.

## SIXTH CAUSE OF ACTION AS TO ALL DEFENDANTS
### Retaliation Under the Administrative Code

65.     Plaintiff repeats and realleges paragraphs 1 to 64 of this Complaint as if fully set forth herein.

66.     By the acts and practices described above, defendants have retaliated and defendants VALDES and KERNISANT have aided and abetted in said retaliation against plaintiff in violation of the Administrative Code.

67.     Defendants acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

68.     Plaintiff is now suffering irreparable injury and monetary damage from Defendant's retaliatory conduct and will continue to do so unless and until the Court grants relief.

## SEVENTHCAUSE OF ACTION AGAINST ALL DEFENDANTS
### Intentional Infliction of Emotional Distress

69.     Plaintiff repeats and realleges paragraphs 1 to 68 of this Complaint as if fully set forth herein.

70.     By the intentional, reckless, extreme and outrageous conduct described above, defendants have caused and continue to cause plaintiff severe emotional distress.

71.     Plaintiff is now suffering irreparable injury and monetary damage from defendants' extreme and outrageous conduct and will continue to do so unless and until the Court grants relief.

## EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### Negligent Infliction of Emotional Distress

72.     Plaintiff repeats and realleges paragraphs 1 to 71 of this Complaint as if fully set forth herein.

73.     By the negligent acts described above, defendants have caused and continue to cause plaintiff severe emotional distress.

74.     Plaintiff is now suffering irreparable injury and monetary damage from defendants' negligent acts and extreme and outrageous conduct and will continue to do so unless and until the Court grants relief.

## NINTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### Breach of Contract

75.     Plaintiff repeats and realleges paragraphs 1 to 74 of this Complaint as if fully set forth herein.

76.     Plaintiff duly and satisfactorily performed all of the obligations to be performed on his part pursuant to the terms of his employment agreement and position in a satisfactory manner at all times.

77.     On October 7, 2007, defendant KERNISANT, at the behest of defendant VALDES discharged plaintiff from his employment, without prior warning and without cause.

78.     The termination of plaintiff's employment with the defendants was contrary to the agreement by and between the parties.

79.     Plaintiff has suffered damage by reason of the defendants' breach of the employment agreement.

80.     The defendants had no cause to terminate plaintiff's employment.

81.     Plaintiff performed all of the obligations and duties which were required to be performed on his part pursuant to the terms of this agreement.

82.     The defendants' breach of contract has damaged plaintiff in terms of the loss of all earnings plaintiff would have received but for defendants' unlawful conduct, including, but not limited to, wages, pension, 401(k) contributions, bonuses and other lost benefits, not including costs, disbursements, attorneys' fees and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an award:

(a)    declaring that the acts and practices complained of herein are in violation of Section 1981, the ADEA the Executive Law and the Administrative Code;

(b)    enjoining and permanently restraining these violations of Section 1981, the ADEA, the Executive Law and the Administrative Code;

(c)    directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)    directing defendants to reinstate plaintiff to the position he would have occupied but for defendants' unlawful conduct and making him whole for all earnings he would have received but for Defendants' unlawful conduct, including, but not limited to, wages, pension, 401(k) contributions, bonuses and other lost benefits;

(e)    directing defendant to pay plaintiff punitive damages;

(f)    directing defendant to pay an additional amount to compensate Plaintiff for the emotional distress and reputational damage defendant's unlawful conduct has caused Plaintiff;

(g)    awarding plaintiff such interest as is allowed by law;

(h)    awarding plaintiff his reasonable attorneys' fees and costs; and

(i)    - granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure,

a trial by jury in this action.

Dated: New York, New York
      September 17, 2009

LAW OFFFICE OF
CHRISTINE A. RODRIGUEZ

Christine A. Rodriguez, Esq.
(CR7353)
Attorney for Plaintiff
EMIGDIO A. BUCOBO, M.D.
225 Broadway, Suite 2900
New York, NY 10007
(212) 430-6525

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF NEW YORK   )

**CHRISTINE A. RODRIGUEZ, ESQ.**, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

I am an attorney at the **LAW OFFICE OF CHRISTINE A. RODRIGUEZ**, attorneys of record for Plaintiff **EMIGDIO A. BUCOBO, M.D.** I have read the annexed **VERIFIED COMPLAINT** and know the contents thereof, and the same is true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

The reason I make the foregoing affirmation instead of the Plaintiff is because Plaintiff is not presently in the county or state wherein the attorneys for the Plaintiffs maintain their offices.

Dated:       NEW YORK, NEW YORK
             September 17, 2009

                                                              _____
                                                              Christine A. Rodriguez, Esq.
                                                              (CR7353)